Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| UNIQUE SECURITY CORPORATION<br><br>Licitador-Recurrente<br><br>V.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO DE MAYAGÜEZ<br><br>Recurrida<br><br>POWER COMM, INC.<br><br>Licitador-Agraciado<br><br>ARIMAR, INC. INDUSTRIAL SECURITY PRODUCTS, INC.<br><br>Licitadores- Participantes | TA2025RA00255 | *Revisión de Decisión Administrativa* procedente del Municipio Autónomo de Mayagüez, División de Subastas<br><br>Subasta de RFD Núm.: 2025-012<br><br>Sobre: Adq. de Towers Cam para las Oficinas de Manejo de Emergencias de la Región Oeste de Homeland Security Grant Program |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 22 de octubre de 2025.

El 22 de septiembre de 2025, compareció ante este Tribunal de Apelaciones, Unique Security Corporation (en adelante, Unique o parte recurrente), mediante *Recurso de Revisión Administrativa.* Por medio de este, nos solicita la revisión de la *Notificación de Acuerdo o Determinación Final sobre la RFP Núm. 2025-012*, emitida y notificada mediante correo electrónico el 12 de septiembre de 2025, por la Junta de Subastas del Municipio de Mayagüez (en adelante, Junta de Subastas o parte recurrida).

Por los fundamentos que adelante se esbozan, se confirma la adjudicación de subasta recurrida.

**I**

El 25 de marzo de 2025, el Municipio Autónomo de Mayagüez (en adelante, Municipio) publicó el *Aviso Público Solicitud de Propuesta Año Fiscal 2024-2025*, el Request for Proposal número 2025-12 (RFP 2025-12). El propósito de dicho RFP, es la adquisición de *towers cam* para las Oficinas de Manejo de Emergencias de la Región Oeste de Homeland Security Grant Program. El aludido aviso, estableció que, la fecha y hora de la reunión pre-propuesta compulsoria sería el 11 de abril de 2025 a las 10:00 am. Mientras que, la fecha límite para presentar la propuestas y la hora de celebración sería el 29 de abril de 2025, a las 10:00 am. Dicho aviso, mencionó que, los pliegos de especificaciones e instrucciones para la Solicitud de Propuestas, así como los requisitos de cualificación y/o documentos requeridos, estarían disponibles a partir de la publicación del anuncio en la División de Subastas del Municipio. Asimismo, advirtió que, el incumplimiento con la presentación de cualquiera de los documentos requeridos en el pliego de condiciones y especificaciones, requisitos obligatorios para participar en el proceso de subasta, sería motivo para la descalificación de la oferta presentada, por parte de la Junta de Subastas. También, apercibió que, los licitadores deberían cumplir con todas las reglamentaciones federales.

En cuanto al Pliego de Especificaciones del RFP Núm. 2025-012 (en adelante, Pliego), este esbozó los requisitos, las instrucciones, términos y condiciones generales para participar en el proceso de licitación. El Capítulo I especifica que, las propuestas que no reúnan los requisitos esbozados en el pliego, serán descartadas en el proceso de evaluación. Igualmente, respecto al alcance expresa lo siguiente:

> El Municipio Autónomo de Mayagüez (el "Municipio) como Municipio Líder de la región Oeste de Homeland Security solicita propuestas para la adquisición de

aproximadamente diez (10) towers cam para las Oficinas de Manejo de Emergencias que comprenden la misma. Esta cantidad podrá ser mayor o menor sujeto a la identificación de fondos adicionales para satisfacer la necesidad.

Los equipos para adquirir serán costeados con la subvención federal conocida como "Homeland Security Grant Program" (HSGP) año fiscal 2023 y 2024 y este proceso se regirá por los requisitos del dicho programa federal y los reglamentos de competencia locales y federales. La propuesta será adjudicada al proponente más responsivo cuya propuesta reúna las especificaciones, requisitos obligatorios, términos y condiciones, instrucciones generales y especiales y que sea el más conveniente para las necesidades del municipio Autónomo de Mayagüez, en adelante Municipio. Una vez adjudicada la propuesta, el Municipio preparará un contrato formal a ser firmado entre las partes convenidas y emitirá las órdenes de compra para que se pueda comenzar con la adquisición de los equipos descritos en esta solicitud.
Notifíquese.

En la sección 1.5 del Capítulo 1 del pliego de especificaciones del RFP Núm. 2025-012, se describe el formato que debían tener las propuestas a ser presentadas. Por otro lado, la sección 1.6 expresa que, la División de Subastas se reserva el derecho de modificar o enmendar los documentos de la Propuesta en cualquier momento. Respecto a la presentación de la propuesta, la sección 1.7 establece que los proponentes debían incluir lo siguiente:

1. **Formulario de oferta**, en formato suministrado, debidamente completado, firmado y sellado.

2. **Fianza de Garantía de Licitación (BID BOND)** de una compañía de seguros de solvencia reconocida, o cheque certificado, giro postal o moneda legal de los Estados Unidos por el 5% de su oferta para garantiza que ha de formalizar el contrato si se le adjudica la buena pro de la Solicitud de Propuesta, incluyendo una vigencia no menor de **120 días**, escrita en el texto de la fianza.

3. Evidencia de tener el **"Unique Entity Identifier" (UEI)**, para hacer negocios con el Gobierno Federal;

4. **Resolución Corporativa** firmada y sellada, en el formato suministrado, indicando quienes están autorizados a hacer negocios o la **Certificación de Autorización de Dueño o Socio Principal de Negocio No Incorporado**.

5. **Good Standing** emitido por el Departamento de Estado.

6. Evidencia de la Registración en el **System for Award Management** (mejor conocido como **"SAM"** o "SAM System").

7. **Formulario de Información General (en la pág. 18)**

8. Certificación de que los dueños del comercio/empresas no han sido desaforados para hacer negocios con el Gobierno Federal **"CERTIFICACIÓN SOBRE SUSPENSIÓN, DECLARACIÓN DE INELEGIBILIDAD, "DEBARMENT"**

9. **Certificación de Ausencia de Conflicto de Interés**

10. **Certificación de la entrega de la Ley 2-2018**

11. **Declaración Jurada de la Ley 2-2018**

12. **Sworn Statement for Non Collusive, completado y notarizado**

13. **Literatura Técnica** del manufacturero de los productos cotizados

14. **Certificación de Situación Personal** cumplimentad[a] y firmada

15. **Certificación de Restricción de Cabildeo** cumplimentada y firmada

16. **Hoja de Invitación, Proposición y Aceptación** cumplimentada y firmada

17. **Condiciones Generales** iniciadas

18. **Condiciones especiales** iniciadas

19. **Adendas** firmadas

20. **Declaración Jurada de Ausencia de Colusión**.

Sobre la fecha de la reunión de orientación, entrega y apertura de propuestas, el pliego establece:

| EVENTO | FECHA | LUGAR |
|---|---|---|
| **Anuncio del Aviso Público** | **4/marzo/2025** | **Periódico Primera Hora** |
| **Disponibilidad de los Pliegos** | **Desde el 4/marzo/2025 en horas laborables** | **División de Subastas, Piso 2 del Edificio Albizu, Calle de Diego #56 Este, del Municipio Autónomo de Mayagüez** |

| Reunión Pre-Subasta No Compulsoria | 17/marzo/2025 10:00 am | Salón de Conferencias de la División de Subasta, Piso 2 del Edificio Albizu, Calle de Diego #56 Este, del Municipio Autónomo de Mayagüez |
|---|---|---|
| Preguntas o Aclaraciones sometidas por los Licitadores | La fecha y hora límite, se establecerá en la Reunión No Compulsoria | Enviar al siguiente correo electrónico: **subastas@mayaguezpr.gov** **omme@mayaguezpr.gov** |
| Entrega y Apertura de las Propuestas | En o antes de las 10:00 a.m. del 28/marzo/2025 | Salón de Conferencias de la División de Subastas, Piso 2 del Edificio Albizu, Calle de Diego #56 Este, del Municipio Autónomo de Mayagüez |

De acuerdo a la sección 1.13 del Capítulo 1, el Municipio se reserva el derecho de adjudicar la totalidad de la Propuesta a uno o a varios proponentes, de entenderlo necesario bajo los parámetros del mejor valor para cumplir con los mejores intereses del Municipio. De igual manera, la sección 1.19 del mismo Capítulo acentúa que, los proponentes tendrán que suplir todos los productos e información requeridos en la solicitud de propuestas y sus anejos, basado en las especificaciones y condiciones fijadas.

Por su parte, la sección 3.1 del Capítulo 3 del Pliego, establece los requisitos obligatorios generales, a saber:

- **Formulario de Oferta**- utilizando el formato provisto en los pliegos de la solicitud de propuesta, debidamente completado, firmado y sellado.

- **La Fianza de garantía de Licitación (BIN BOND)**- garantizará que el proponente asegure al Municipio que habrá de sostener su propuesta durante todo el procedimiento, esto incluye desde la fecha de la apertura hasta la emisión de la orden de compra o la firma del contrato, cuando éste sea el caso. La fianza de Garantía de Licitación puede ser suministrada en cheque certificado, giro o mediante una garantía de una compañía aseguradora "Bid Bond" pagadero al MAM. La fianza de una compañía de seguros, con una clasificación A-, Categoría V o mejor, según clasificada por AM Best. De ser sometida la fianza de licitación a través de una compañía de seguros, deberá utilizar el formulario provisto, junto con este documento.

- **Unique Entity Identifier ("UEI")**- El Proponente tiene que presentar evidencia de tener un **Unique Entity Identifier ("UEI")** y tener un registro

vigente en el System for Award Management (mejor conocido como "SAM" o "SAM System").

Entre las certificaciones requeridas, el Pliego exige que, se presente una certificación que los dueños del comercio/empresas licitando no han sido desaforados para hacer negocios con el Gobierno Federal.[1]

En cuanto a los requerimientos, el Pliego, en su sección 5.2 del Capítulo 5, dispone que, estos están establecidos en los Capítulos 1, 2, 3 y 4 de la solicitud de propuestas. Sin embargo, aclaró que, la Oficina de Subastas del Municipio de Mayagüez se reserva el derecho de incluir cualquier otro requerimiento que entienda pertinente y necesario para garantizar el fiel cumplimiento de los requisitos en ley y reglamentos aplicables.

De igual forma, el Capítulo 6 del Pliego expone los siguientes criterios de evaluación:

| CRITERIO | PUNTUACIÓN |
|---|---|
| 1. Requisitos Obligatorios | 25 |
| 2. Precio | 50 |
| 3. Especificaciones del Equipo | 10 |
| 4. Disponibilidad | 50 |
| 5. Término de Entrega | 40 |
| 6. Garantías | 25 |
| **Total de Puntuación** | **200** |

Reseña, además, que se entenderá que una oferta o propuesta está dentro del margen de selección establecido cuando esta cumpla con las especificaciones, términos y condiciones establecidas en el pliego; con los requerimientos de información solicitados en el procedimiento de evaluación, entre otros. Añade que, la falta de cumplimiento de cualesquiera de los requisitos o criterios esbozados, será razón suficiente para que la Junta de Subastas ejerza su prerrogativa de descartar al proponente.[2]   El mismo

---

[1] Sección 32.2 del Capítulo 3 del Pliego.
[2] Sección 6.1(B) del Capítulo 6 del Pliego.

Capítulo señala que, durante el proceso de evaluación, el Comité Evaluador y/o la Junta de Subastas, se reserva el derecho de solicitar a él o los proponentes seleccionados, datos adicionales, interpretación más precisa de la información o documentación ofrecida, y/o la realización de presentaciones orales.[3]

Según surge del expediente, el 11 de abril de 2025, se celebró la *Reunión Pre-Propuesta*. De acuerdo a la *Minuta Reuni[ó]n Pre-Propuesta*, estuvieron presentes funcionarios de la Junta de Subastas del Municipio, el señor Ricardo Montes en representación de la compañía Arimar, el señor Joshua Berríos en representación de la compañía Unique Security, el señor Eric Gabriel en representación de la compañía ISP y el señor Quintin Ramos en representación de la compañía Power Comm.

El 29 de abril de 2025, la Junta de Subastas celebró una reunión para llevar a cabo la apertura de las ofertas del RFP 2025-12. De acuerdo al *Acta de Celebración*, la Junta de Subastas recibió cuatro (4) propuestas de las compañías Arimar, Inc., ISP, Power Comm y Unique Security, Corp. A la apertura de las ofertas comparecieron el señor Ricardo Rivera (Arimar, Inc), los señores Rafael López y Eric Gabriel (ISP), el señor Osvaldo Rodríguez (Power Comm), y el señor Joshua Berrios (Unique Security), en representación de sus respectivas compañías licitadoras.

Así las cosas, el 16 de julio de 2025, la Junta de Subastas remitió un correo electrónico donde le notificó a los licitadores los documentos a deber para poder continuar con el procedimiento de evaluación de las propuestas sometidas. Según surge de dichos correos electrónicos, se les solicitó lo siguiente:

1. ISPR:

- Cumplimiento con el Buy American Act.

2. Arimar, Inc.:

---

[3] Sección 6.1(C) del Capítulo 6 del Pliego.

- Cumplimiento con el Buy American Act
- Resolución corporativa o certificación de autorización de dueño o socio
- Certificado de Good Standing – Departamento de Estado
- Certificado de no haber sido desaforado para hacer negocios con el Gobierno Federal (Debarment)
- Certificación de Ausencia de Conflicto de Interés
- Declaración Jurada conforme a la Ley 2-2018
- Sworn Statement for Non-Collusive Bidding, completado y notarizado
- Certificación de Restricción de Cabildeo, completada y firmada Anti-Lobbying Certification"

3. Power Comm:

- Cumplimiento con el Buy American Act

4. Unique Security:

- Cumplimiento con el Buy American Act
- Resolución corporativa o certificación de autorización de dueño o socio
- Condiciones generales iniciadas
- Certificado de no haber sido desaforado para hacer negocios con el Gobierno Federal (Debarment)
- Certificación de Ausencia de Conflicto de Interés
- Sworn Statement for Non-Collusive Bidding, completado y notarizado
- Formulario de Oferta completado, firmado y sellado
- Certificación de Restricción de Cabildeo, completada y firmada "Anti-Lobbying Certification"

Se les concedió a los licitadores hasta el 24 de julio de 2025, para someter los documentos solicitados.

Posteriormente, el 19 de agosto de 2025, fue celebrada una reunión con el propósito de evaluar las propuestas sometidas para recomendación de adjudicación. En igual fecha, el Comité Evaluador emitió el *Informe de Evaluación y Recomendación de RFP Núm. 2025-012 para Adquisición de Towers Cam para las Oficinas de Manejo de Emergencias de la Región Oeste de Homeland Security Grant Program.* En el aludido informe, el Comité Evaluador expresó que, a pesar de Unique ser el licitador más económico, no cumplió con la certificación de *Buy American*, cuyo requisito es obligatorio para la

adquisición de equipos financiados con fondos federales, por lo cual su oferta no podía ser considerada. Recomendó la adjudicación del RFP 2025-012 a Power Comm. Inc., por ser la propuesta con mayor puntuación en los criterios de evaluación, tener un costo razonable y cumplir con la totalidad de los requisitos solicitados en el pliego.

Más adelante, la Junta de Subastas remitió una misiva al Comité Evaluador. Mediante esta, devolvió la recomendación, debido a que razonaron que, "[s]e hace necesario que someta evidencia de los correos electrónicos, enviados a todos los licitadores participantes para este proceso, en que usted les solicita documentos no incluidos en las propuestas". Conforme a tal requerimiento, el 5 de septiembre de 2025, el Comité Evaluador tramitó lo solicitado.

El 12 de septiembre de 2025, la Junta de Subastas emitió la *Notificaci[ó]n de Acuerdo o Determinaci[ó]n Final sobre la RFP Núm. 2025-012 Adq. De Towers Cam para las Oficinas de Manejo de Emergencias de la Regi[ó]n Oeste de Homeland Security Grant Program* (en adelante, notificación o determinación final). Dicha notificación incluyó un resumen de las propuestas presentadas junto a un análisis y evaluación de las mismas.

Sobre la aquí recurrente, resumió que, esta presentó propuesta por $25,000.00 por unidad, para un total de $250,000.00, con garantía de 2 años y entrega en 3 semanas. Por otro lado, la Junta de Subastas, dispuso que, Unique Security no cumplió con la entrega de los documentos solicitados el 16 de julio de 2025, y que, se le llamó en tres (3) ocasiones pero no contestó. En cuanto a la tabla de requisitos, se desglosó como sigue:

| Criterio | Puntuación Máxima | Unique Security, Corp. |
|---|---|---|
| Requisitos Obligatorios | 25 | 0 |
| Precio | 50 | — |
| Especificaciones de equipo | 10 | — |
| Disponibilidad | 50 | — |

| | | |
|---|---|---|
| Término de entrega | 40 | — |
| Garantías | 25 | — |
| **Puntuación Total** | **200** | **0** |

A tales efectos, se incluyó una nota donde se expuso que, no se le otorgó puntuación a Unique Security, ya que, al no haber presentado el *Buy American Act*, no cumplía con el requerimiento federal.

La Junta de Subastas detalló que, Arimar, Inc. presentó dos opciones de propuestas: Propuesta por $43,900.00 por unidad, para un total de $439,000.00, y propuesta por $45,595.00 por unidad, para un total de $455,950.00. Ambas con garantía de dos (2) años y entrega de 75 días. Señaló, además, que, Arimar, Inc. cumplió parcialmente con la entrega de los documentos. Le otorgó la siguiente puntuación:

| Criterio | Puntuación Máxima | Unique Security, Corp. |
|---|---|---|
| Requisitos Obligatorios | 25 | 22 |
| Precio | 50 | 48 |
| Especificaciones de equipo | 10 | 10 |
| Disponibilidad | 50 | 50 |
| Término de entrega | 40 | 40 |
| Garantías | 25 | 10 |
| **Puntuación Total** | **200** | **180** |

Respecto a ISP, Inc. surge que, esta presentó una propuesta por $59,969.00 por unidad, para un total de $599,690.00, con garantía de cinco (5) años y entrega entre 90 a 120 días. Sobre el documento requerido el 16 de julio de 2025, este cumplió con su entrega. Respecto a la puntuación otorgada, se describe como sigue:

| Criterio | Puntuación Máxima | Unique Security, Corp. |
|---|---|---|
| Requisitos Obligatorios | 25 | 25 |
| Precio | 50 | 33 |
| Especificaciones de equipo | 10 | 10 |
| Disponibilidad | 50 | 50 |
| Término de entrega | 40 | 35 |
| Garantías | 25 | 25 |
| **Puntuación Total** | **200** | **178** |

En cuanto a Power Comm, Inc., se desprende que esta presentó propuesta por $41,923.46 por unidad, para un total de

$419,230.60, con garantía de 3 años y entrega entre 90 a 150 días.

De acuerdo a la notificación, el documento solicitado el 16 de julio de 2025 fue entregado por Power Comm, Inc. La puntuación obtenida por dicho licitante fue la siguiente:

| Criterio | Puntuación Máxima | Unique Security, Corp. |
| --- | --- | --- |
| Requisitos Obligatorios | 25 | 25 |
| Precio | 50 | 50 |
| Especificaciones de equipo | 10 | 10 |
| Disponibilidad | 50 | 50 |
| Término de entrega | 40 | 33 |
| Garantías | 25 | 15 |
| **Puntuación Total** | **200** | **183** |

La Junta de Subastas reseñó que, de la evaluación se desprende que el licitador más económico no cumplió con los requisitos federales. Por tanto, no se le pudo adjudicar la puntuación. Explicó que, el no cumplir con los requerimientos federales provocaba que el Municipio tenga que asumir los costos de la compra, ya que no serán reembolsables, conforme indicado por la señora Carmen Rodríguez Berríos, *Program Manager* del Homeland Security Grant Program, en una reunión celebrada el 11 de julio de 2025.

Por último, la Junta de Subastas emitió su acuerdo o determinación final, donde dispuso lo siguiente:

Luego de evaluar las ofertas recibidas por os licitadores, tomando en consideración el cumplimiento con las especificaciones, así como las normas de ley y reglamentarias aplicables a estos procesos:

A tenor con los requisitos de **RFP NUM. 2025-012 ADQ. DE TOWERS CAM PARA LAS OFICINAS DE MANEJO DE EMERGENCIAS DE LA REGION OESTE DE HOMELAND SECURITY GRANT PROGRAM** y de conformidad con las disposiciones de la Ley 107, la facultad conferida en el Reglamento de Subastas y, en beneficio del interés público, la Junta de Subastas, ha determinado por unanimidad adjudicar en su totalidad la **RFP NUM. 2025-012 a la compañía: POWER COMM, INC., con una oferta de $419,230.60 con 3 años de garantía y entrega entre 90 a 150 días**. Conforme al Reglamento de Subastas, dado que fue el postor con mayor puntuación, y teniendo presente el beneficio de adjudicación que representa al interés público.

La notificación de adjudicación, apercibió del término disponible para presentar un recurso de revisión ante el Tribunal de Apelaciones. A saber, diez (10) días a partir de la fecha del envío por correo electrónico y de la copia de la notificación del acuerdo final o adjudicación[4].

En desacuerdo, la parte recurrente presentó el recurso de epígrafe, donde esgrimió los siguientes señalamientos de error:

> **Primer error:** Erró la Junta de Subastas del Municipio de Mayagüez al solicitar documentación adicional a los licitadores con posterioridad a la apertura de la subasta.

> **Segundo error:** Erró la Junta de Subastas del Municipio de Mayagüez al descalificar a Unique por no entregar documentación que estaba impedida de solicitar con posterioridad a la apertura de la subasta.

Por otro lado, la parte recurrida presentó *Alegato en Oposición al Recurso de Revisión Administrativa.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Request for Proposal (RFP)

Como es sabido, en nuestra jurisdicción, la contratación gubernamental de todo tipo de servicios está revestida del más alto interés público, pues persigue fomentar la inversión adecuada, responsable y eficiente de los recursos del Estado. *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 794 (2023); *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA Gen. Contract v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018). Con el fin de lograr lo antes mencionado, el gobierno utiliza los procedimientos de subasta o RFP como mecanismo de adquisición de bienes y servicios, para así proteger el erario y garantizar que se realicen sus funciones administrativas responsablemente. *Mun. Aguada v. W Const. y Recovery Finance,*

---

[4] Al amparo de la Ley Núm. 107 de 13 de agosto de 2020, según enmendada.

214 DPR 432, 453 (2024); *St. James Security v. AEE,* 213 DPR 366, 377 (2023); *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 531 (2019).[5]

En *Puerto Rico Asphalt, v. Junta,* 203 DPR 734, 737 (2019), nuestro Más Alto Foro explicó que, el propósito primordial de estos dos vehículos procesales es proteger el erario, al fomentar la libre y diáfana competencia entre el mayor número de licitadores posibles. Con ello, se pretende maximizar la posibilidad del Gobierno para obtener el mejor contrato, mientras se protegen los intereses y activos del pueblo contra el dispendio, el favoritismo, la corrupción y el descuido al otorgarse contratos así como minimizar los riesgos de incumplimiento. *Transporte Rodríguez v. Jta. Subastas,* 194 DPR 711, 716–717 (2016); *Mun. Aguada v. W Const. y Recovery Finance,* supra, citando a *Caribbean Communications v. Pol. de P.R.,* 176 DPR 978, 994 (2009); *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 531.

El proceso de subasta tradicional consta de varias etapas y no admite negociación alguna entre la agencia y el licitador luego de sometida la propuesta. *Mun. Aguada v. W Const. y Recovery Finance,* supra, pág. 454. Por el contrario, el mecanismo de requerimiento de propuestas constituye un procedimiento informal y flexible, que permite al proponente negociar con el gobierno y enmendar o revisar su oferta antes de la adjudicación. *Íd.*; *St. James Sec. v. AEE,* supra, págs. 377-378; *PR Eco Park et al. v. Mun. de Yauco,* supra, págs. 531-532; *R & B Power v. E.L.A.,* 170 DPR 606, 621 (2007). En ese sentido, le confiere a la entidad pública un mayor grado de discreción al considerar una propuesta. *Mun. Aguada v. W Const. y Recovery Finance,* supra, pág. 454; *R & B Power v. E.L.A.,* supra, pág. 623. Además, su uso es común cuando el bien o servicio que

---

[5] *Trans Ad de P.R. v. Junta de Subastas,* 174 DPR 56, 66 (2008); *Marina v. Comisión,* 170 DPR 847, 854 (2007).

interesa adquirir el ente gubernamental involucran aspectos altamente complejos o cuando existen escasos competidores calificados. *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 454; *St. James Sec. v. AEE*, supra, pág. 378; *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 532; *R & B Power v. E.L.A.*, supra, págs. 621-622.

Cabe señalar que, aun cuando se trata de procesos distintos, la subasta tradicional y el requerimiento de propuestas no son del todo incompatibles. *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 455; *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 532; *Caribbean Communications v. Pol. de P.R.*, supra, pág. 998. Ambos gozan de características adjudicativas y ninguno está exento del derecho de revisión judicial. *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 455; *PR Eco Park et al. v. Mun. de Yauco*, supra, citando a *R & B Power v. E.L.A.*, supra, pág. 624.

Por otro lado, en nuestro ordenamiento jurídico no existe una legislación especial que regule los procesos de subasta. Corresponde a cada ente gubernamental ejercer su poder reglamentario para establecer el procedimiento y las guías que han de seguir en sus subastas para la adquisición de bienes y servicios. *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 456. Aunque la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU),[6] reglamenta ciertos aspectos de las subastas, esta legislación excluyó de la definición de agencia a los municipios.  Por lo que, a estos no les aplican las disposiciones de esta ley. *Puerto Rico Asphalt v. Junta,* supra, págs. 737-738; *Mun. Aguada v. W Const. y Recovery Finance*, supra, pág. 456. A esos efectos, las subastas que celebren los municipios quedan reguladas por el Código Municipal de Puerto Rico[7].

---

[6] 3 LPRA sec. 9601 *et seq.*
[7] Ley Núm. 107 de 14 de agosto de 2020, según enmendada.

El Art. 2.040 del Código Municipal, esboza los criterios de adjudicación de las subastas, a saber:

> La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración y otros.
>
> a.  Criterios de adjudicación — Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. En el caso de ventas o arrendamiento de bienes muebles e inmuebles adjudicará a favor del postor más alto. **La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.**
>
> La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación.
>
> La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código.[8] (*Énfasis suplido*).

Por otra parte, el *Reglamento para la Administración Municipal*, Reglamento Núm. 8873 del 19 de diciembre de 2016

---

[8] 21 LPRA sec. 7216(a).

(Reglamento Núm. 8873) establece las normas y las guías administrativas para los procedimientos de subastas. En la Sección 1 del Capítulo VII, Parte II del Reglamento Núm. 8873, establece que, para las adquisiciones, servicios y obras que serán sufragados en todo o en parte con fondos federales, los municipios estarán obligados a cumplir con la regulación y normativa federal aplicable a la asignación federal recibida.

El Capítulo VIII, Parte II del Reglamento Núm. 8873, *supra*, también establece el procedimiento de adjudicación por el cual deben regirse las subastas municipales. Las secciones 3, 4 y 5 del referido Capítulo VIII, brindan los detalles de la publicación y contenido del aviso de subasta, así como sobre el contenido de los pliegos de especificaciones. Por su parte, las secciones 6-10 disponen sobre otros requisitos del proceso, en los que incluyen la reunión pre-subasta, la subasta general, la radicación de las ofertas, la apertura de los pliegos de subasta pública y la orden general de proceder con la adjudicación. De igual manera, la sección 11 del aludido Capítulo VIII establece la norma general de adjudicación. En específico, dispone que, la adjudicación de subastas se hará a favor del licitador que se encuentre respaldado por un buen historial de capacidad y cumplimiento. Asimismo, deberá reunir los siguientes requisitos: 1) cumplir con los requisitos y condiciones de los pliegos de especificaciones y, 2) que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.[9] En las instancias en las que se adjudique a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas estará obligada a hacer constar por escrito las razones que justifican la adjudicación. Tal justificación

---

[9] Reglamento Núm. 8873, *supra*.

escrita deberá estar firmada por los miembros de la Junta de Subastas que la favorecieron y debe permanecer en el expediente para fines de auditoria futura.[10]

Según podemos observar, tanto el Código Municipal como el Reglamento Núm. 8873, *supra,* coinciden en que las subastas y/o los RFP, se deberán adjudicar a favor de la propuesta que cumpla con las especificaciones. *Mun. Aguada v. W Const. y Recovery Finance,* supra, pág. 457.

Respecto al aviso de adjudicación de subastas, la Sec. 13 de la Parte II del aludido reglamento preceptúa la obligación del Presidente de la Junta de emitir una notificación de adjudicación o determinación final por escrito y por correo certificado con acuse de recibo a todos los licitadores que participaron en la subasta. En cuanto al contenido del aviso de adjudicación o la determinación final de subastas, el inciso (3) de esa sección dispone que la notificación debe contener la información siguiente: *(a) el nombre de los licitadores; (b) una síntesis de las propuestas sometidas; (c) los factores o criterios que se tomaron en cuenta para adjudicar la subasta y las razones para no adjudicar a los licitadores perdidosos; (d) el derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, y el término para ello, que es en el término jurisdiccional de diez días contados desde el depósito en el correo de la notificación de adjudicación; y (e) la fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones.*

Nuestro Máximo Foro, en el caso de *PR Eco Park et al. v. Mun. de Yauco,* supra, dispuso que, para que una notificación de subasta sea correcta debe cumplir con los siguientes requisitos: (1) estar por

---

[10] Reglamento Núm. 8873, *supra.*

escrito; (2) enviarse a cada uno de los licitadores por correo regular y certificado con acuse de recibo; (3) advertirle a los participantes el derecho a solicitar la revisión judicial ante el Tribunal de Apelaciones; (4) indicar que el término de diez días para ir en alzada es de carácter jurisdiccional; (5) señalar la fecha del archivo en autos de la copia de la notificación de la adjudicación y la fecha del depósito de la notificación en el correo y que a partir de esta última es que se activa el plazo para acudir al Tribunal de Apelaciones[11]. Asimismo, deberá contener la siguiente información: nombre de los licitadores, síntesis de las propuestas sometidas, factores o criterios que fueron tomados en consideración para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos.[12]

Por último, sobre la exigencia de fundamentar la adjudicación de una subasta por una agencia administrativa, en *LPC & D, Inc. v. AC*, 149 DPR 869, 877–888 (1999), nuestro Tribunal Supremo señaló que "para que este Tribunal pueda cumplir con su obligación constitucional y asegurar que el derecho a obtener la revisión judicial de una decisión de una agencia sea efectivo, es imprescindible exigir que ella esté fundamentada, aunque sea de forma sumaria".[13] Si la parte adversamente afectada por la determinación de la agencia desconoce los fundamentos que propiciaron su decisión, "el trámite de la revisión judicial de la determinación administrativa se convertiría en un ejercicio fútil".[14] En ese sentido, "[n]o basta con informar la disponibilidad y el plazo para solicitar la reconsideración y la revisión[15] Además, una notificación fundamentada permite que los tribunales puedan "revisar efectivamente los fundamentos para determinar si la

---

[11] A la página 538.
[12] *Íd*, pág. 537.
[13] Véase, además, *RBR Const., SE v. AC*, 149 DPR 836 (1999).
[14] *Id.*
[15] *Puerto Rico Asphalt v. Junta,* supra, citando a: *LPC & D., Inc. v. AC,* 149 DPR 869, 878 (1999).

determinación de la junta ha sido arbitraria, caprichosa o irrazonable", más aún en el caso de subastas públicas, en virtud de las cuales se desembolsan fondos públicos.[16]   Por ello, "'[*so*]*lo a partir de la notificación así requerida es que comenzará a transcurrir el término para acudir en revisión judicial*". (Énfasis en el original).[17]

## B. The Buy American Act

Según la legislación federal, *The Buy American Act* exige que, los materiales que se adquieran con fondos federales para ser utilizados con fines públicos, sean manufacturados en los Estados Unidos.   En específico, la sección 8302 dispone que:

(a)   In General. –

(1)   Allowable materials.—Only unmanufactured articles, materials, and supplies that have been mined or produced in the United States, and only manufactured articles, materials, and supplies that have been manufactured in the United States substantially all from articles, materials, or supplies mined, produced, or manufactured in the United States, shall be acquired for public use unless the head of the Federal agency concerned determines their acquisition to be inconsistent with the public interest, their cost to be unreasonable, or that the articles, materials, or supplies of the class or kind to be used, or the articles, materials, or supplies from which they are manufactured, are not mined, produced, or manufactured in the United States in sufficient and reasonably available commercial quantities and of a satisfactory quality.

(2)   Exceptions.—This section does not apply—

(A)   to articles, materials, or supplies for use outside the United States;

(B)   to any articles, materials, or supplies procured pursuant to a reciprocal defense procurement memorandum of understanding (as described in section 8304 of this title), or a trade agreement or least developed country designation

---

[16] Véase: JA Echevarría Vargas, *Derecho administrativo puertorriqueño*, 4ta ed. rev., San Juan, Ed. Situm, 2017, pág. 297. Véanse, además: *Transporte Rodríguez v. Jta. Subasta*, supra, pág. 721; *LPC & D, Inc. v. AC*, supra, pág. 879.

[17] *Puerto Rico Asphalt v. Junta,* supra, citando a *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 534; *IM Winner, Inc. v. Mun. de Guayanilla*, supra, pág. 38.

described in subpart 25.400 of the Federal Acquisition Regulation; and

(C) to manufactured articles, materials, or supplies procured under any contract with an award value that is not more than the micro-purchase threshold under section 1902 of this title. 41 U.S.C.A. § 8302 (a)

Esbozada la normativa jurídica que enmarca la controversia de epígrafe procedemos a aplicarla.

**III**

En su primer señalamiento de error, la parte recurrente sostiene que, la Junta de Subastas incidió al solicitar documentación adicional a los licitadores con posterioridad a la apertura de la subasta.

Como segundo señalamiento de error, la parte recurrente arguye que, la Junta de Subastas erró al descalificar a Unique por no entregar documentación que estaba impedida de solicitar con posterioridad a la apertura de la subasta.

Por encontrarse intrínsecamente relacionados, discutiremos ambos señalamientos de error de forma conjunta.

Adelantamos que, no le asiste la razón. Veamos.

De acuerdo al tracto reseñado, el 25 de marzo de 2025, el Municipio publicó el *Aviso Público Solicitud de Propuesta Año Fiscal 2024-2025*, para el RFP 2025-12. En igual fecha, el Municipio hizo disponible el Pliego de Especificaciones del RFP Núm. 2025-012, donde se esbozaron los requisitos, términos, las instrucciones y condiciones generales para participar en el proceso de licitación. Más adelante, la Junta de Subastas recibió cuatro (4) propuestas de las compañías Arimar, Inc., ISP, Power Comm y Unique Security, Corp.

El 16 de julio de 2025, la Junta de Subastas remitió un correo electrónico a los licitadores, donde les notificó sobre los documentos que debían presentar para continuar con el procedimiento de

evaluación de las propuestas sometidas. Entre otros documentos, a todos los licitadores se les exigió presentar evidencia de haber cumplido con el *Buy American Act*. Únicamente, ISPR y Power Comm cumplieron con dicho requisito. Por otro lado, en lo pertinente, a Unique, además, le solicitaron la presentación de los siguientes documentos:

1. Cumplimiento con el Buy American Act

2. Resolución corporativa o certificación de autorización de dueño o socio

3. Condiciones generales iniciadas

4. Certificado de no haber sido desaforado para hacer negocios con el Gobierno Federal (Debarment)

5. Certificación de Ausencia de Conflicto de Interés

6. Sworn Statement for Non-Collusive Bidding, completado y notarizado

7. Formulario de Oferta completado, firmado y sellado

8. Certificación de Restricción de Cabildeo, completada y firmada "Anti-Lobbying Certification"

Del Pliego surge que, los documentos enumerados 2, 3, 4, 5, 6, 7 y 8 debían ser incluidos en la propuesta. De igual manera, el Pliego establecía como *requisito obligatorio* la presentación del Formulario de Oferta debidamente completado, firmado y sellado.

El 12 de septiembre de 2025, la Junta de Subastas emitió la determinación final cuya revisión nos atiene. En cuanto a la aquí recurrente, la Junta de Subastas dispuso que, esta no cumplió con la entrega de los documentos solicitados el 16 de julio de 2025, y que, se le llamó en tres (3) ocasiones, pero no contestó. Asimismo, determinó no otorgarle puntuación a Unique por no haber cumplido con el requerimiento federal al no presentar el *Buy American Act.*

De acuerdo al derecho expuesto, *The Buy American Act* exige que, los materiales que se adquieran con fondos federales para ser utilizados con fines públicos, sean manufacturados en los Estados

Unidos.[18] El Reglamento Núm. 8873, también establece que, para las adquisiciones, servicios y obras que serán sufragados en todo o en parte con fondos federales, los municipios estarán obligados a cumplir con la regulación y normativa federal aplicable a la asignación federal recibida.

En el caso de epígrafe, el Pliego detalló que, los equipos para adquirir **iban a ser costeados con la subvención federal conocida como *Homeland Security Grant Program*** y que, el proceso de subasta ser regiría por los requisitos de dicho programa federal y los reglamentos de competencia locales y federales. Igualmente, el *Aviso Público Solicitud de Propuesta Año Fiscal 2024-2025*, apercibió de forma clara que, los licitadores debían cumplir con todas las reglamentaciones federales. Esto incluye el cumplimiento con *The Buy American Act.*

Si bien es cierto que, el pliego no exigía de forma expresa el cumplimiento con el *Buy American Act*, este es un requisito federal con el que los licitadores debían cumplir para ser considerados. Este requisito no quedaba a discreción de la Junta de Subastas ni de los licitadores. Ante la necesidad de cumplimiento con tal requisito, la Junta de Subasta estaba facultada para exigir su cumplimiento.

Cabe destacar que, el Pliego expresó en reiteradas ocasiones que, la Junta de Subastas se reservaba el derecho de modificar o enmendar los documentos de la Propuesta en cualquier momento.[19] El Pliego también menciona que, la Oficina de Subastas del Municipio de Mayagüez se reserva el derecho a incluir cualquier otro requerimiento que entienda pertinente y necesario para garantizar el fiel cumplimiento de los requisitos en ley y reglamentos aplicables.[20] Conforme a esto último, se reitera que, la Junta de

---

[18] 41 U.S.C.A. § 8302 (a)
[19] Véase sección 1.6 del Capítulo 1 del Pliego.
[20] Véase sección 5.2 del Capítulo 5 del Pliego.

Subastas estaba capacitada para exigir prueba del cumplimiento de la reglamentación federal, en específico con *The American Act.*

La parte recurrente sostiene que, los documentos requeridos mediante el correo electrónico enviado el 16 de julio de 2025, no fueron solicitados con anterioridad. Dicho planteamiento le falta a la verdad, puesto que, pudimos corroborar que tales documentos sí fueron exigidos mediante el Pliego, según ya discutido anteriormente. A pesar de que los aludidos documentos fueron requeridos en el Pliego, y que la Junta de Subastas le brindó la oportunidad a la parte recurrente de presentarlos posterior a la apertura de las ofertas, esta no los entregó. Por lo que, la Junta de Subastas estaba facultada para descalificar la propuesta de Unique.

Recordemos que, el *Aviso Público Solicitud de Propuesta Año Fiscal 2024-2025*, advirtió que, el incumplimiento con la presentación de cualquiera de los documentos requeridos en el pliego de condiciones y especificaciones, y de los requisitos obligatorios para participar en el proceso de subasta, sería motivo para que la Junta de Subastas descalificara cualquier oferta presentada. De igual manera, el Pliego apercibió que, la falta de cumplimiento de cualesquiera de los requisitos o criterios expuestos en el mismo, sería razón suficiente para que la Junta de Subastas ejerza su prerrogativa de descartar al proponente.[21] Únicamente se entendería que una oferta o propuesta está dentro del margen de selección establecido cuando esta cumpliese con las especificaciones, términos y condiciones establecidas en el pliego y con los requerimientos de información solicitados en el proceso de evaluación. Por tanto, la Junta de Subastas actuó dentro del marco de sus facultades al descalificar a Unique Security.

---

[21] Véase sección 6.1(B) del Capítulo 6 del Pliego.

**IV**

Por los fundamentos que anteceden, se *confirma* la adjudicación de subasta recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones